NOT FOR PUBLICATION

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| Joseph RIZZO,<br><br>    Plaintiff,<br><br>v.<br><br>Robert CONNELL, Jr., a/k/a Robert Connell, individually and as an agent of the New Jersey Bureau of Water Monitoring and Standards, et al.,<br><br>    Defendants. | Civ. No. 10-4136<br><br>OPINION |

THOMPSON, U.S.D.J.

      This matter has come before the Court on Defendants Robert Connell, Jr., Mark Mauriello, Scott Brubaker, Amy Cradic, James Joseph, Thomas Foca, and Leslie McGreorge's (collectively, "Defendants") Motion for Judgment on the Pleadings [Docket #20].  All Defendants have been sued in both their individual capacity and in their official capacity as an agent or employee of varied New Jersey State regulatory bodies.  Plaintiff Joseph Rizzo has opposed the Defendants' motion [24].  The Court has decided this motion upon the submissions of the parties and without oral argument pursuant to Fed. R. Civ. P. 78(b).  For the following reasons Defendants' motion will be granted and Plaintiff's claims will be dismissed.

    **I.**     **BACKGROUND**

      Plaintiff Joseph Rizzo has brought suit alleging violations of the United States Constitution by certain state actors.  For purposes of this motion, the Court accepts as true all well-pleaded factual allegations in Plaintiff's Amended Complaint ("Complaint").  *See DiCarlo v. St. Mary Hosp.*, 530 F.3d 255, 262–63 (3d Cir. 2008).  During all relevant times in this case

Rizzo was a shellfisherman who both raised and harvested clams in waters located in the State of New Jersey.  Two incidents involving two separate bodies of water are at issue in this case.

First, Plaintiff harvests shellfish in the Navesink River in accordance with an open water license issued by the New Jersey Department of Environmental Protection (NJDEP).  On April 7, 2009, there was an accidental sewage spill into these waters.  As a result, NJDEP suspended shellfish harvesting in the affected area, including the area in which Plaintiff harvested his clams, pursuant to an administrative order.  Although NJDEP's Depuration Program and Bureau of Law Enforcement were notified of the closure on this same day, individual baymen working in the area were not notified until the next day.  Following the closure of the Navesink River, Defendant Thomas Foca, an official with the New Jersey Department of Health (NJDOH), found clams that were labeled as having been taken from the Navesink River on the same day as the sewage spill.  Foca ordered those clams to be destroyed.   NJDEP eventually reopened the Navesink for shellfish harvesting on April 12, 2009.  Thereafter, Plaintiff sought and received restitution from the company responsible for the sewage spill for the clams that he argues were unlawfully seized and destroyed pursuant to Foca's orders.  Plaintiff, however, contends that he is still owed money due to costs incurred in obtaining this restitution (i.e., legal fees) and for emotional distress.  Plaintiff claims that Defendants violated his constitutional rights under the Takings Clause, [1] (Compl. ¶ 1:21), the Due Process Clause, (Compl. ¶ 1:21), and the Equal Protection Clause, (Compl. ¶¶ 1:22–23), which are all in, or incorporated through, the Fourteenth Amendment.

---

[1] Defendants argue in their reply brief that Plaintiff has not sufficiently put Defendants on notice that he intends to press a violation of the Takings Clause in his Amended Complaint.  (Defs.' Reply Br. 4).  The Court agrees that the Complaint in this case was inartfully drafted.  Plaintiff has stated, however, that his claims were brought pursuant to Due Process clause of the Fourteenth Amendment, (Compl. ¶ Jurisdiction), which has incorporated the Takings Clause as applied to the fifty states, *see Chicago, Burlington & Quincy R.R. Co. v. Chicago*, 166 U.S. 226 (1897).  This incorporation, accompanied by Plaintiff's allegation that "[t]he confiscation of Plaintiff's clams and unauthorized destruction thereof deprived Plaintiff of his property without just compensation," (Compl. ¶ 1:21), is sufficient to have at least put Defendants on notice that this claim was raised in the Amended Complaint.

The second body of water at issue in this case is Jenny's Creek, which is classified as a "Special Restricted" body of water under NJDEP regulations. Because of this designation, shellfish grown in Jenny's Creek can be used for human consumption only pursuant to a special permit issued by NJDEP. Plaintiff has leased multiple clam lots from NJDEP in Jenny's Creek since 1997. On February 9, 2009, however, he was told by Robert Connell, Jr., an NJDEP official, that the waters in Jenny's Creek were Special Restricted and therefore could not be utilized without a special permit. Following this, Plaintiff was prevented from harvesting shellfish from the leased areas until August 21, 2009, when Leslie McGeorge, another NJDEP official, notified Rizzo that the area was reopened for shellfish harvest. Plaintiff claims that Defendants were grossly negligent in not permitting shellfishing in the disputed areas and in asserting that the waters were condemned. Furthermore, Plaintiff contends that certain NJDEP officials improperly failed to restore his property and contractual rights arising under the lease agreement with NJDEP. Plaintiff alleges that the set of facts revolving around the Jenny's Creek leases violated his constitutional rights under the Contracts Clause, (Compl. ¶¶ 2:16, 2:20), the Due Process Clause as incorporated through the Fourteenth Amendment, (Compl. ¶ 2:20), and the Takings Clause as incorporated through the Fourteenth Amendment,[2] (Compl. ¶¶ 2:16, 2:20).

Defendants have moved to dismiss Plaintiff's claims pursuant to Fed. R. Civ. P. 12(c). They argue that Plaintiff's claims against the Defendants in their official capacities are barred by the Eleventh Amendment, that Defendants' official capacities are not "persons" subject to liability under 42 U.S.C. § 1983, that Plaintiff has not sufficiently pled a violation of his constitutional rights, that the state officials are entitled to qualified immunity, and that the Court lacks jurisdiction under 28 U.S.C. § 1343.

---

[2] *See* note 1, *supra*.

## II.     LEGAL STANDARD

Under Rule 12(c) of the Federal Rules of Civil Procedure, a court will grant judgment on the pleadings if, on the basis of the pleadings, no material issue of fact remains and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 12(c); *DiCarlo*, 530 F.3d at 259. The standard governing a Rule 12(c) motion is the same one governing motions to dismiss under Rule 12(b)(6). *Allah v. Hayman*, No. 11-2460, 2011 U.S. App. LEXIS 17860, *8 (3d Cir. Aug. 25, 2011); *Spruill v. Gillis*, 372 F.3d 218, 223 n.2 (3d Cir. 2004). Therefore, a district court should conduct a three-part analysis. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'take note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, --- U.S. ---, 129 S. Ct. 1937, 1947 (2009)). Second, the court must accept as true all of a plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). But, the court should disregard any conclusory allegations proffered in the complaint. *Id.* Finally, once the well-pleaded facts have been identified and the conclusory allegations ignored, a court must next determine whether the "facts are sufficient to show that plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 129 S. Ct. at 1949). This requires more than a mere allegation of an entitlement to relief. *Id.* "A complaint has to 'show' such an entitlement with its facts." *Id.* A claim is only plausible if the facts pleaded allow a court reasonably to infer that the defendant is liable for the misconduct alleged. *Id.* at 210 (quoting *Iqbal*, 129 S. Ct. at 1948). Facts suggesting the "mere possibility of misconduct" fail to show that the plaintiff is entitled to relief. *Id.* at 211 (quoting *Iqbal*, 129 S. Ct. at 194).

### III. DISCUSSION

#### a. Eleventh Amendment

The first issue for the Court to decide is whether the Eleventh Amendment applies to Plaintiff's claims. In his opposition brief, Plaintiff concedes that his claims against all of the Defendants in their official capacities must be dismissed. (Pl.'s Opp. Br. 29 ("Eleventh Amendment immunity . . . bars suit against the State or any of its agencies and/or state officials sued in their official capacities . . . .")). The Court agrees. *See generally Haybarger v. Lawrence Cnty. Adult Prob. & Parole*, 551 F.3d 193, 198 (3d Cir. 2008). As such, all claims against the Defendants in their official capacities are dismissed.

#### b. Equal Protection

Plaintiff also seems to have abandoned his Equal Protection claims against the Defendants; he makes no responsive arguments to those put forward in the Defendants' initial brief. For a plaintiff to prevail on an Equal Protection claim he must allege either that he was a member of a protected class that was treated differently from members of a similarly situated class or that he was a "class of one" who was intentionally treated differently from others similarly situated. *See, e.g.*, *Lorenzo v. Seeley*, No. 06-1682, 2008 U.S. Dist. LEXIS 28318, *25 (D.N.J. Apr. 7, 2008); *compare Andrews v. City of Philadelphia*, 895 F.2d 1469, 1478 (3d Cir. 1990) (Plaintiff "must demonstrate that they received different treatment from that received by other individuals similarly situated" by showing "that any disparate treatment was based on [a protected category].") *with Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) ("Our cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated

5

and that there is no rational basis for the difference in treatment."). Plaintiff has failed to allege any facts that indicate that he was treated any differently than those similarly situated. In fact, the opposite is true in this case. Plaintiff appears to allege that, regarding the Jenny's Creek leasehold, he was treated identically to another shellfishermen in the same situation. (*See* Compl., ¶¶ 2:12–13). Therefore, his equal protection claims must also be dismissed.

### c. Contracts Clause

The Contracts Clause of the United States Constitution provides that "No State shall . . . pass any . . . Law impairing the Obligation of Contracts." U.S. CONST. art. I, § 10, cl. 1. According to the United States Court of Appeals for the Third Circuit:

> To make out a claim under that clause, [a plaintiff] must show that a change in state law has operated as a substantial impairment of a contractual relationship. A court makes three threshold inquiries in evaluating a Contract Clause claim: (1) whether there is a contractual relationship; (2) whether a change in a law has impaired that contractual relationship; and (3) whether the impairment is substantial.

*Perano v. Twp. of Tilden*, 423 F. App'x 234, 239 (3d Cir. 2011). Perhaps even more importantly, "the claim must rest on an exercise of legislative power, not the acts of administrative or executive boards or officers." *Id.* (citing *New Orleans Waterworks Co. v. La. Sugar Ref. Co.*, 125 U.S. 18, 30 (1888); *Kinney v. Conn. Judicial Dep't*, 974 F.2d 313, 314 (2d Cir. 1992)). The Plaintiff in this case has failed to allege that any legislative action interrupted a contract to which he was a party. The only acts complained of are those that were done by administrative agents and officers. As such, he cannot show that there was "a change in a law" within the meaning of the Contracts Clause. Therefore, his Contract Clause claims must be dismissed.

### d. Takings Clause and Ripeness

Defendants argue in this case that Plaintiff's Takings Clause claims under both counts one and two should be dismissed because Plaintiff has failed to exhaust his administrative remedies. Plaintiff has attempted to avoid this problem by alleging in his Complaint that Cali Alexander, an agent of the New Jersey Department of Health and Senior Services, advised him "that there was no mechanism [for Rizzo to recover for his losses] and that the baymen 'would have to take the loss.'" (Compl. ¶ 1:17). According to Plaintiff, "[a]s a result of the statements made by Cali Alexander[,] it is plain that Plaintiff has no State remedy for the unlawful confiscation of his clams." (Compl. ¶ 1:18).

A claim brought by a plaintiff pursuant to the Takings Clause is not ripe for consideration "if a State provides an adequate procedure for seeking just compensation" and the plaintiff has not exhausted this procedure. *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 195 (1985). Although exhaustion is normally not required in the context of a § 1983 action, the exhaustion requirement in this context "merely addresses a unique aspect of Just Compensation Takings claims." *Cnty. Concrete Corp. v. Twp. of Roxbury*, 442 F.3d 159, 168 (3d Cir. 2006). Only after exhaustion has been satisfied can a Takings claimant allege that he or she "has actually been denied just compensation, and, thus, only then is his or her Takings claim ripe." *Id.*

In this case, Defendants argue that Plaintiff could have brought an action under the New Jersey Eminent Domain Act of 1971 (the "Eminent Domain Act"), N.J.S.A. 20:3-1, *et seq*. The Eminent Domain Act, however, permits actions against a condemnor only in regard to "property." The clams in this case do not meet the statutory definition of property. *See* N.J.S.A.

20:3-2(d).[3]  Therefore, this is not an adequate procedure through which the Plaintiff could have obtained just compensation in regard to his claims under count one of the Complaint.

In regard to Plaintiff's claims under count two of the Complaint, Plaintiff could have brought an inverse condemnation proceeding under N.J.S.A. 20:3-8.  The leaseholds in this case are clearly "property" as defined under the Eminent Domain Act.  *See* note 3, *supra*.  However, nowhere in the Complaint does Plaintiff allege that he has sought and was denied just compensation.  Therefore, Plaintiff's Takings Clause claim under count two is not ripe for adjudication and must be dismissed.[4]  *See, e.g.*, *Cowell v. Palmer Twp.*, 263 F.3d 286, 290–91 (3d Cir. 2001) (holding that plaintiff's claims were unripe when they failed to avail themselves of Pennsylvania's inverse condemnation procedure); *Miles v. Twp. of Barnegat*, 343 F. App'x 841, 845–46 (3d Cir. 2009) (affirming district court's dismissal of plaintiff's complaint as unripe

---

[3] N.J.S.A. 20:3-2(d) defines "property" as

> land, or any interest in land, and (1) any building, structure or other improvement imbedded or affixed to land, and any article so affixed or attached to such building, structure or improvement as to be an essential and integral part thereof, (2) any article affixed or attached to such property in such manner that it cannot be removed without material injury to itself or to the property, (3) any article so designed, constructed, or specially adapted to the purpose for which such property is used that (a) it is an essential accessory or part of such property; (b) it is not capable of use elsewhere; and (c) would lose substantially all its value if removed from such property.

*Id.*

[4] The Court notes that the set of facts surrounding this case are unique in that the property at issue is already "public" in the sense that it was leased to Plaintiff by the State. The Court has been unable to find any New Jersey cases that have an analogous set of facts. The Eminent Domain Act, however, provides that "[w]henever any condemnor shall have determined to acquire property pursuant to law, *including public property already devoted to public purpose, but cannot acquire . . . possession thereof* by agreement with a prospective condemnee, whether by reason of disagreement concerning . . . the condemnation of such property and the compensation to be paid therefor, . . . and all matters incidental thereto and arising therefrom shall be governed, ascertained and paid by and in the manner provided by this act." N.J.S.A. 20:3-6 (emphasis added). Moreover, a condemnee is defined as "*the owner of an interest* in the private property being condemned for a public purpose under the power of eminent domain." N.J.S.A. 20:3-2(c). As explained above, the property that is the subject of the lease is "property" within the meaning of the Eminent Domain Act. *See* note 3, *supra*. Lastly, a condemnor has the ability to condemn a lesser title to property than that of a full fee simple if it chooses to do so; this includes a leasehold. *See* N.J.S.A. 20:3-20; *see also Town of Kearny*, 16 A.3d at 405. Taking these statutory provisions as a whole, this Court has no trouble finding that the New Jersey Supreme Court would likely find that the lease at issue in this case is subject to eminent domain provisions under New Jersey law.

because they failed to avail themselves of the remedies available under the Eminent Domain Act).[5]

### e. Property Interests

The next issue to be decided by this Court is whether the Plaintiff has validly pled that he has a property interest at stake in this case. If Plaintiff does not have a valid property interest at stake, then his claims under the Takings Clause and the Due Process Clause must be dismissed. *See Baker v. McCollan*, 443 U.S. 137, 140 (1979) ("The first inquiry in any § 1983 suit . . . is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'"); *see also Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 9 (1978) ("The Fourteenth Amendment places procedural constraints on the actions of government that work a deprivation of interests enjoying the stature of 'property' within the meaning of the Due Process Clause."); *Am. Express Traveler Related Servs. Co. v. Sidamon-Eristoff*, 755 F. Supp. 2d 556, 586 (D.N.J. 2010) ("The first inquiry this Court must make in a takings analysis is to determine whether [the plaintiff] has a property right . . . .").

To begin its analysis, the Court must look to state law. It is well settled that "[p]roperty interests . . . are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of

---

[5] The Court does not read Plaintiff's Complaint as raising a substantive due process claim. However, to the extent that Plaintiff has raised a substantive due process claim, it is not "unrelated to the Defendants' conduct in taking the Plaintiff['s] property without resort to the Eminent Domain Act. Whether the claims are characterized as substantive due process claims or as a takings claims, the result is the same. The claims are not ripe for review until the Plaintiff[] avail[s himself] of [his] just compensation remedies in state court." *Miles*, 343 F. App'x at 846.

entitlement to those benefits." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). In this case, Plaintiff has claimed a particularized property interest in unharvested clams at the Navesink River site during the period in which the Navesink River was shut down due to the sewage spill, the clams that were harvested and ordered destroyed by Defendant Foca, and in the leased river bed areas of Jenny's Creek. The Court will consider each of these in turn.

### 1. Navesink River

First, the parties dispute whether the Plaintiff had a property right in the harvestable species within the Navesink River. Plaintiff argues that he has a "constructive property interest," even in the absence of ownership, of the water's harvestable species by way of his being a commercial fisherman under *Douglas v. Seacoast Prods., Inc.*, 431 U.S. 265 (1977). Defendants, on the other hand, argue that a general license to harvest clams from open public waters is not a particularized property interest under *Spalt v. N.J.D.E.P.*, 567 A.2d 264 (N.J. App. Div. 1989).

In *Douglas*, the Supreme Court of the United States was presented with the question of whether two Virginia laws that prevented non-Virginian citizens from capturing certain fish within its portion of the Chesapeake Bay was unconstitutional. *See Douglas*, 431 U.S. at 267. Virginia first argued that federal law did not preempt the statutes at issue because another federal law recognized state ownership of fish swimming in their territorial waters. *See id.* at 283. The Court, however, rejected this argument. It noted that the Submerged Lands Act, 43 U.S.C. § 1301, *et seq.*, "give[s] the States 'title,' 'ownership,' and 'the right and power to manage, administer, lease, develop, and use' the lands beneath the oceans and natural resources in the waters within state territorial jurisdiction." *Douglas*, 431 U.S. at 283 (citing 43 U.S.C. § 1311(a)). But, the Court recognized that

> [t]o put the claim of the State upon title is . . . to lean upon a slender reed. A State does not stand in the same position as the owner of a private game preserve and it is pure fantasy to talk of 'owning' wild fish, birds, or animals. Neither the States nor the Federal Government, any more than a hopeful fisherman or hunter, has title to these creatures until they are reduced to possession by skillful capture. The "ownership" language of cases such as those cited by appellant must be understood as no more than a 19th-century legal fiction expressing the importance to its people that a State have power to preserve and regulate the exploitation of an important resource.

*Id.* at 284 (internal citations and quotations omitted). This case does not stand for the proposition that Plaintiff suggests—i.e., that commercial fishermen have a "constructive property right" to harvestable fish. Instead, this case stands for the basic constitutional premise that a State cannot interfere with interstate commerce by discriminating against citizens of other states[6] and that Congress did not grant states an unfettered ownership interest in harvestable sea-life within its jurisdiction. To the extent that this case discussed the property interest of *fisherman*, as opposed to the States, the Court made clear that "hopeful fishermen" do not have a property interest in harvestable fish until "they reduce [those fish] to possession by skillful capture." *Id.* Other cases have reached analogous conclusions. *See, e.g.*, *Calvert v. Zimmer*, No. 95-2041, 1995 U.S. Dist. LEXIS 13401 (E.D. Pa. 1995) (citing Restatement (Second) of Torts § 508; *Douglas*, 431 U.S. at 284) ("The possessor of land does not acquire possession of the animal[s]" upon it.).

In *Spalt*, the New Jersey Superior Court, Appellate Division, addressed numerous issues regarding the property rights, or lack thereof, that shellfishermen in the State of New Jersey possess in regards to harvestable shellfish and navigable waters. The court first held that "generalized property rights shared with other property owners is insufficient to demonstrate a particularized property right or other special interest." *Spalt*, 567 A.2d at 268 (citing *Hills Dev. Co. v. Bernards Twp.*, 551 A.2d 547, 556 (N.J. App. Div.1988)). To the extent that the shellfishing licenses provided by the State grants any sort of property right to the Plaintiff, this is

---

[6] The Court notes that this case was ultimately decided on non-constitutional grounds.

merely a "generalized property right[] shared with other property owners," (i.e., other baymen holding the same license to harvest shellfish in the Navesink River) and therefore it is not particularized.

The *Spalt* court also went on to reject the argument that the plaintiff had a particularized property right to pursue his occupation. *Id.* "The right to pursue a particular job[,] as opposed to the right to gainful employment, is not a fundamental right. The test to be applied to [the] alleged deprivation is the rational basis test." *Id.* This led the court to conclude that what was at stake was merely "deprivation of the right to work at a particular job site. The State's interest in waterfront redevelopment within the protective requirements of [enacted legislation] forms a rational basis for this deprivation." *Id.* In that same manner, the State of New Jersey's interest in "preserv[ing] and regulat[ing] the exploitation of an important resource," *Douglas*, 431 U.S. at 284, as protected by the issuance of shellfishing licenses under N.J.S.A. 7:12-9.1, forms a rational basis for whatever deprivation Plaintiff seeks to redress at the Navesink River site. Temporarily closing the Navesink River did not deprive the Plaintiff of his right to gainful employment; it merely deprived him of the ability to work at a particular job site. It is important to remember that "to have a property interest in a benefit that is protected by procedural due process, 'a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.'" *Robb v. Philadelphia*, 733 F.2d 286, 292 (3d Cir. 1984) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)). The right to work at that specific job site (i.e., the Navesink River) pursuant to state-issued shellfishing license is not a particularized property interest. As such, claims asserting an interference with this right under the Takings Clause or the Due Process Clause are not actionable.

    2. *Harvested Shellfish*

The next issue to be addressed by this Court is whether Plaintiff has a valid property interest in the clams that he harvested on April 7, 2009, which were subsequently destroyed by Defendant Foca. There is little doubt that if Plaintiff properly harvested these clams he would have a particularized property interest in those clams that would be protected by the Federal Constitution. In this case, however, Defendants argue that Plaintiff does not have a valid property interest because he had no authority to harvest those clams in the first place as a result of the administrative order closing the Navesink River on the date in question.

> Pursuant to N.J.S.A. 58:24-2, NJDEP is required to
>
> immediately condemn any oyster or clam bed or other place from which oysters, clams or other shellfish are or may be taken upon discovering that such place is subject to pollution or to any other condition which may render the oysters, clams or other shellfish in such place or which may be taken therefrom, dangerous to health.

Moreover, NJDEP "shall prohibit the taking of oysters, clams or other shellfish from a place which has been condemned by the department pursuant to this act, and shall also prohibit the distribution, sale, offering for sale or having in possession of any such shellfish so taken." N.J.S.A. 58:24-3. A person who violates this provision is guilty of either a petty disorderly persons offense or a disorderly persons offense. *See* N.J.S.A. 58:24-10. Therefore, Plaintiff never properly obtained an actionable property interest in the clams harvested on April 7, 2009. *See, e.g.*, *Stevens v. Wallace*, 162 A. 646, 650 (N.J. 1932) (stating that property acquired by a criminal act "never resides" in the criminal and that the same is true when property is procured improperly through fraud).

Plaintiff's Complaint alleges that no notification of the Navesink River closure was given to individual baymen until the day following the closure, (Compl., ¶ 1:11), and that "[n]o closure order may become effective until proper public notice is promulgated and given," (Compl., ¶ 1:7). Notice that is required to be given by NJDEP during times of immediate shellfish harvest

13

suspension is governed by N.J.A.C. 7:12-1.5(e). This regulation provides that "[NJDEP] shall immediately notify representatives of agencies or organizations affected by a harvest suspension or restriction under this section by fax or e-mail. Notice of harvest suspension or restriction shall be posted in areas where those harvesting shellfish would be likely to enter the water." N.J.A.C. 7:12-1.5(e). There is no allegation that this provision was not complied with. Plaintiff alleges only that "it was not until the following day on April 8, 2009, when someone appeared at the launching areas to advise them that the closed section of the Navesink River was, in fact, closed." (Compl., ¶ 1:11). Individualized notice, however, is almost never the standard required under the law. *Cf. United States v. Shenandoah*, 595 F.3d 151, 159 (3d Cir. 2009) ("It is axiomatic that ignorance of the law does not provide a defense, for it is presumed that every person knows the law." (citing *Cheek v. United States*, 498 U.S. 192, 199 (1991)). Nothing indicates that notice in this case should deviate from this general rule.

Plaintiff, moreover, has pointed to no cases that support his position that he must have personally become aware of the immediate suspension. Instead, Plaintiff directs the Court to the lease Rizzo signed with NJDEP concerning the Jenny's Creek location.[7] This lease is simply inapplicable to the Navesink River site. In addition, this Court is free to ignore legal conclusions contained in the Complaint. *See Fowler*, 578 F.3d at 210–11. It is clear to the Court that the allegations contained in paragraph 1:7 of the Complaint are conclusory. Therefore, the Court gives them no weight.

Thus, because Plaintiff never properly acquired the clams that were ordered destroyed by Defendant Foca, he did not have a particularized property interest in them. The remaining claims under count one of the Complaint are therefore dismissed for failure to state a claim.

---

[7] The Court notes that the Plaintiff has mischaracterized the contents of this lease. Although the lease provides that it may be cancelled and the grounds forfeited without notice if Plaintiff fails to pay the rental price, it does *not* say that the lease can be terminated without demand or notice "[o]*nly* in the event of a flagrant breech of the lease conditions by Plaintiff." (Pl.'s Opp. Br. 10 (emphasis added)).

### 3. Jenny's Creek

Lastly, it is unclear whether the Defendants argue that there is no protected property right at the Jenny's Creek location. Plaintiff, however, expends considerable time in his brief contending that leaseholds are particularized property interests under New Jersey state law. Therefore the Court will address this issue.

In *Town of Kearny v. Discount City*, 16 A.3d 300, 405–06 (N.J. 2011), the New Jersey Supreme Court held that leaseholders have a separate property right subject to eminent domain separate and apart from the underlying record-holders right in the property. *See also* N.J.S.A. 20:3-20; N.J.S.A. 20:3-2(b); N.J.S.A. 40A:12A-3. In *Spalt*, however, the court held that the plaintiffs did not have a protected property interest in shellfish leaseholds. *Spalt*, 567 A.2d 268. But unlike here, the alleged damage that would occur to the plaintiff in *Spalt*, if any, was to occur after the expiration of the lease. *Id.* Therefore, the court held only that there was no future interest in the shellfish leasehold property beyond the expiration of the current lease. *See also RAR Dev. Assocs. v. N.J. Sch. Constr. Corp.*, No. A-57-06T1, 2008 N.J. Super. Unpub. LEXIS 2206, *15–22 (N.J. App. Div. July 9, 2008) (holding that there is no protected property interest in the expectation that a lease will be renewed). In contrast, there is a particularized property interest in the Jenny's Creek leaseholds in this case because any alleged taking occurred during a time frame falling wholly within the length of the lease. Thus, Plaintiff has properly pled that he has a particularized property interest with regard to his lease of the Jenny's Creek location.

### f. Procedural Due Process and Available Remedies

Although Plaintiff has adequately pled that he has a property interest in the Jenny's Creek leasehold, his procedural due process claims must fail for a different reason. "To make out a procedural due process claim, [Plaintiff] must show that the Defendants deprived him of a

protected property interest and that the state procedure for challenging the deprivation was constitutionally inadequate." *Perano v. Twp. of Tilden*, 423 F. App'x 234, 237 (3d Cir. 2011).

Rizzo argues not that the procedures available to him were inadequate but that these procedures simply did not exist. (Pl.'s Opp. Br. 27). As noted above, however, Plaintiff has a state procedural remedy available to him, *see* N.J.S.A. 20:3-1, *et seq.*—he simply did not avail himself of it. Plaintiff has not "set forth behavioral or structural allegations from which we can infer that [this] process [is] unconstitutional." *Rogin v. Bensalem Twp.*, 616 F.2d 680, 694 (3d Cir. 1980), *cert. denied*, 450 U.S. 1029 (1981).

The United States Court of Appeals for the Third Circuit has recognized that in New Jersey an inverse condemnation proceeding "is initiated when an aggrieved property owner requests the court to issue a writ of mandamus compelling the appropriate governmental entity to initiate condemnation proceedings." *Peduto v. City of North Wildwood*, 878 F.2d 725, 728 n.3 (3d Cir. 1989). This procedure "is a remedy designed to protect a landowner whose property has been taken *de facto* by insuring that he be paid reasonable compensation thereof." *In re Jersey Cent. Power & Light Co.*, 400 A.2d 128, 129 (N.J. App. Div. 1979). This prevents "an appropriation of property by a governmental entity . . . without its having undertaken to condemn or pay compensation to the landowner for the taking" by permitting those with a property interest in the land a cause of action "in the nature of *mandamus* to compel institution of condemnation proceedings." *Id.* As the Superior Court of New Jersey, Appellate Division, has stated: "Condemnation proceedings are normally initiated by the condemning authority; inverse condemnation proceedings are initiated by the landowner—hence the 'inverse' label." *Id.* at 129–30.

Defendants argue that the Third Circuit in *Peduto* held that such proceedings are a constitutionally adequate procedure for obtaining just compensation. "[A] state provides

16

constitutionally adequate procedural due process when it provides reasonable remedies to rectify a legal error by a local administrative body." *DeBlasio v. Zoning Bd. of Adjustment for Twp. of West Amwell*, 53 F.3d 592, 597 (3d Cir. 1995), *abrogated in part on other grounds by United Artists Theatre Circuit, Inc. v. Twp. of Warrington*, 316 F.3d 392, 400 (3d Cir. 2003). In *Peduto*, the Third Circuit was presented with a question of whether the plaintiff had a full and fair opportunity to present their federal claims during an inverse condemnation procedure. The court concluded that the Plaintiffs received a full and fair opportunity to litigate their federal claims under this state court procedure. *Peduto*, 878 F.2d at 728. Moreover, the court cited with approval a case from the United States Court of Appeals for the Eighth Circuit, which held that an inverse condemnation proceeding is a constitutionally adequate procedure to obtain just compensation. *See Collier v. Springdale*, 733 F.2d 1311 (8th Cir. 1984).

It is well established that the Due Process Clause of the Fifth Amendment "does not provide or require that compensation shall be actually paid in advance of the occupancy of the land to be taken. But the owner is entitled to [a] reasonable, certain and adequate *provision for obtaining compensation* before his occupancy is disturbed." *Cherokee Nation v. S. Kan. Ry.*, 135 U.S. 641, 659 (1890) (emphasis added). As noted by the Eighth Circuit: "If the government chooses to dispense with formal condemnation proceedings prior to the seizure of private property for public use, then the constitution only requires that the property owner be able to bring an inverse condemnation action to compel just compensation." *Collier*, 733 F.2d at 1314 (citing *Fountain v. Metro. Atlanta Rapid Transit Auth.*, 678 F.2d 1038, 1043 (11th Cir. 1982)).

> Several courts have refused to find a cause of action under 42 U.S.C. § 1983 where a plaintiff alleges a "taking" of his property by the state without due process without first attempting to avail himself of the state mechanisms for compensation following the *de facto* appropriation. For example, in *Light* [*v. Blackwell*, 472 F. Supp. 333, 337 (E.D. Ark. 1979),] the plaintiffs claimed that certain conduct by the Arkansas State Highway Commission amounted to a taking of their property without just compensation and the continuing torts of trespass,

17

> nuisance, and unreasonably depriving the plaintiffs of lateral support for their property. Equitable and monetary relief was sought pursuant to § 1983. The court succinctly stated that "the plaintiffs here have not been deprived of due process since due process remedies are available to the plaintiffs in state court for the alleged taking of their property." The court refused to permit the property owners to bypass adequate Arkansas statutory and administrative provisions specifically designed to appropriately compensate such litigants within a minimum time frame.

*Collier*, 733 F.2d at 1314–15 (quoting *Light*, 472 F. Supp. at 336, 338). The Court finds this reasoning persuasive. Moreover, it would be illogical for this Court to, on the one hand, hold that Plaintiff's Taking Clause claims are not ripe for adjudication because Plaintiff has not exhausted his state remedies and, on the other hand, to permit his procedural due process claims to proceed in the face of this adequate and available remedy.

The question in a procedural due process challenge is not always whether what was actually done in the present case was adequate under the constitution, but rather it is often whether there exists appropriate means of redress that are constitutionally adequate and whether that constitutionally adequate means of redress was appropriately applied. If a party chooses not to avail itself of available remedies that pass constitutional muster, this does not mean that due process has been violated. Thus, Plaintiff cannot avoid this procedural remedy simply because he was told that he had no remedy; there is an independent duty placed upon a citizen to determine this for oneself. A state administrative official cannot prevent the filing of an inverse condemnation proceeding by executive fiat. If Plaintiff wishes to challenge the acts of Defendants on the grounds listed in the Complaint, he must first do so in state court before seeking a federal forum under § 1983.

### g. Qualified Immunity

Lastly, the Defendants in this case argue that their actions are protected by the doctrine of qualified immunity. Defendants are entitled to qualified immunity "unless [their] conduct

violated a clearly established constitutional right." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). In making this determination, the Court must consider two issues: first, "whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right"; and second, "whether that right at issue was 'clearly established' at the time of defendant's misconduct." *Id.* (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). As explained above, Plaintiff has failed to satisfy the first prong of this test. Therefore, Defendants are entitled to qualified immunity. *See, e.g., Constitutional Guided Walking Tours v. Independence Visitor Ctr. Corp.*, No. 11-2146, 2011 U.S. App. LEXIS 24176, *10 (3d Cir. Dec. 6, 2011) (Plaintiff's "failure to satisfy the first prong of the qualified immunity analysis obviates the need to evaluate the second prong.").

## IV.   CONCLUSION

For the foregoing reasons, Defendant's Motion for Judgment on the Pleadings is granted, and Plaintiff's claims are dismissed. An appropriate order will follow.

*/s/ Anne E. Thompson*
ANNE E. THOMPSON, U.S.D.J.

Date: January 5, 2012